# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | | |
|---|---|---|
| Samuel B. Johnson | ) | Case No.    Civil Action No. 20-CV-60-TJK |
| *Plaintiff(s)* | ) | |
| -v- | ) | |
| Yelp | ) | |
| *Defendant(s)* | ) | |

**Joint Motion for Leave to File a Second Amended Complaint And Opposition to Yelp's Motion   to Dismiss**



RECEIVED Mail Room AUG - 4 2020 Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

**RACIAL DISCRIMINATION COMPLAINT**

The Plaintiff, Samuel B. Johnson, sues the defendant Yelp. In support, Plaintiff states as follows:

1. Plaintiff Samuel B. Johnson resides at 655 Anacostia Ave, NE Washington, DC 20019
2. Defendant Yelp's Corporate Address: 140 New Montgomery Street San Francisco, CA 94105
   Defendants local address: 575 7th Street, NW Washington, DC 20004

3. This Racial Discrimination action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended. The jurisdiction of this Court is invoked by the plaintiff pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202. This lawsuit is brought pursuant to the "The Civil Rights Act of 1866," 42 U.S.C. § 1981, and 1981a and The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991. Equitable and other relief is sought under 42 U.S.C. 2000e-5(g).
4. Plaintiff is an African-American citizen of the United States and a resident of the District of Columbia. Plaintiff has been employed with Yelp as an Account Executive since October 2018.

5. In June 2019, Plaintiff filed a pre-complaint of discrimination through the portal of The Equal Opportunity Employment (EEOC) Commission and subsequently a formal complaint of discrimination at the the EEOC field office located in Washington, DC.
6. On October 9th , 2019 a Notice of Right to Sue letter was issued by the EEOC.
7. During Plaintiffs time of employment with Yelp, he has been subjected to ongoing Employment Discrimination by said employer.  This discrimination was/is intended to deny Plaintiff the ability to ascend from his position as an Account Executive (sales rep) to a Sales Management role.  This Discriminatory behavior by Yelp is contrary to what Plaintiff was promised during his initial interview process in Fall of 2018.  During his interview process, he was informed that the Washington, DC office was expanding rapidly with ambitions of hiring a total of 500 Account Executives for that office and that their policy was to promote said Account Executives into management roles as opposed to hiring managers from "outside" of Yelp.  Plaintiff was told that given his vast experience and background in sales, he would be a shoe in for such a promotion as long as he produced. Plaintiff was told that the company had an emphasis on promoting Black employees to Management - since there were no current Black Managers in the DC office.  One tactic used by Yelp to keep Blacks and the Plaintiff in particular out of Management was to create an issue out of a non-issue and then accuse and label him of being unprofessional.

8. At the time Plaintiff began employment with Yelp in October 2018,  there were no Black Managers in the Washington, DC office.

9. Since the time Plaintiff began employment at Yelp up until now (August 2020), Yelp has in fact, not promoted a single Black employee hired as Account Executives in the Washington, DC office into a Sales Management role.
10. Black Account Executives at Yelp were subjected to a more difficult path to Management than their similarly situated non-Black co-workers. Specifically, Black's were assigned less desirable and lower rated calling territories than non-Blacks. If by chance a Black Account Executive was able to succeed in their less desirable and lower rated calling territory, they were not promoted to Management as the non-Blacks were. As it related to Plaintiff, after he was on track to produce the sales metrics necessary to be promoted, Yelp unfairly and early in his tenure labeled him "unprofessional" or lacking emotional intelligence in order to keep him out of Management.
11. Plaintiff was assigned a less than desirable and poorly rated calling territory when his employment began in October 2018. He was assigned rural Maine (2% Black population, lack of interest or knowledge of Yelp, and had affordability issues). He was also assigned Brownsville, TX ( 94% Hispanic population, median income of approximately $15,000, and many folks in this territory did not speak English fluently).
12. Plaintiff was reprimanded in his 2nd or 3rd month of employment for being unprofessional and condescending to a Maine business owner whose only complaint against Plaintiff was the fact that he called him and left a voicemail. Yelp could not produce any evidence of any unprofessionalism or condescension by Plaintiff (even though all calls are recorded) yet he was still reprimanded and labeled "unprofessional".
13. Plaintiff's Manager Ms. Tracy Parco (during his 2nd or 3rd month of employment), falsely accused him of being "unprofessional during a team meeting because she asked him a question and since he did not have an answer, he simply replied "I don't know". Plaintiff was still reprimanded and forced to carry the label of unprofessional due to this false accusation.
14. In his 2nd-3rd month of employment, Plaintiff was verbally reprimanded by Manager, Ms. Parco for not managing up to her due to the large number of Pick-up/ Hang -ups that he was receiving in his rural Maine territory.
15. In his 2nd-3rd month of employment Plaintiff informed his Manager, Ms. Parco, that the territories that were assigned to him were not a good fit and requested a change. This request was flatly denied.
16. In his 2nd-3rd month of employment, Plaintiff observed that several non-Black employees received territory changes. These similarly situated non Black employees that were lucky enough to be assigned new territories were either on his team or in his Training class.
17. In his 2nd-3rd month of employment, Plaintiff was accused of stealing a laptop computer by Manager, Ms. Parco.
18. In his 4th month of employment, Plaintiff's 2nd request for a territory change was again denied by Ms. Parco although several non-Black teammates were indeed awarded new territories.

19. In his 4th month of employment, Plaintiff's attempt to close an early morning deal was thwarted by Manager, Ms. Parco in addition to members of his team who were following Ms. Parco's lead of loudly yelling at Plaintiff 3 separate times as he was on the phone with a potential customer.
20. In his 4th month of employment, Plaintiff was issued a Final Written Warning from Director Peter Tartelli along with Manager, Parco - simply because he attempted to get Manager, Parco and teammates to stop yelling at him while he was on the phone attempting to close a deal.
21. Plaintiff complained to HR rep, Ms. Briana McKwelin of Employment Discrimination and asserted his protection under the Civil Rights Act of 1964 as a protected class - (Black) against further discrimination and retaliation against him for making said complaint.
22. HR rep, Ms. McKwelin completed her investigation and concluded that Plaintiff was indeed discriminated against. However, Ms. McKwelin refused to provide any written documentation of her findings and furthermore, Yelp never did anyhing to remedy said Discrimination.
23. In February 2019, Plaintiff's new manager, Mr. Jesse Rome was unjustifiably critical of everything that Plaintiff said during the sales process for the 1st few days of Plaintiff being on team. Plaintiff feeling further discriminated against and possibly retaliated against sent an inquiry to HR rep, Ms. McKwelin voicing his concerns. The unjustifiable behavior of Mr. Rome towards Plaintiff immediately ceased - although it should have never occurred in the first place.
24. In April/May of 2019, Plaintiff received new Manager, Andy Joss. When Mr. Joss barged Plaintiff's calls, he deliberately attempted to get him reprimanded or fired by forcing him to use prohibited language such as "no contract, "try it out for 7 days", etc.
25. Plaintiff was issued a reprimand for using language that Manager Joss had ordered him to use during barges.
26. Manager Joss deliberately sabotaged a sale that Plaintiff was closing by inexplicably, beginning to barge his call at a point when the sale was already secured and began ordering him to say things that were counterintuitive to closing a deal - such as "your expectations are too high" to potential customer.
27. Manager Joss under the direction of Center Director, Ally Howard deleted the Mitel recorded conversation of the above call in which Mr. Joss sabotaged the sale - so that Human Resources could not investigate.
28. Manager Joss, using the same barging technology in which ONLY the Account Executive could hear and not the potential customer, routinely left the pod area when Plaintiff got on a call and caused Plaintiff to miss out on countless sales by causing very loud static on the side of Plaintiff only - so that he could not hear prospect and close deals.
29. Plaintiff was forced to be seated in close proximity to Center Director, Ms. Ally Howard for over 6 months so that he could be monitored, scrutinized and chastised by her.
30. After approximately 10 months of employment, Plaintiff was finally awarded a highly rated territory but for 1 month ONLY.

31. Plaintiff's attempt to join management was thwarted in October/November 2019 by Manager Joss as well as boss Director, Ashley Lambert. Mr. Joss, noticing that Plaintiff had signed up for Management Development Training created a minor issue causing Plaintiff to respond - thereby eliminating Plaintiff from possibility of joining Management at that time. This bad news was delivered to him by Director Ashley Lambert.
32. In June 2020, the Racial Discrimination and Retaliation continued as Plaintiff's new Sales Manager, Sales Director and Training Manager, Ms. Jessica Kambic created a derogatory slide in her training presentation which referenced a "Sam" (same first name as Plaintiff) who was struggling to sound like an industry expert. During their team meeting, Ms. Kambic directed Plaintiff to read the caption and prescribe a solution. This request was meant to humiliate, embarrass, ridicule the plaintiff in front of his peers. She was attempting to both keep Plaintiff from rising to management and justify him not already not being promoted to Management. She had also used the same training presentation earlier that day when training groups of Managers - further tarnishing Plaintiff's reputation and ridiculing and humiliating him.
33. The desperate impact of Yelp's systematic attempts to keep Plaintiff from entering Management resulted in a falsely tarnished reputation for not being "professional" as well as a dramatic loss of income that he would have received had he been given the opportunity of receiving a highly rated territory early and been able to work it consistently. Similarly situated non Black members of his training class who he outperformed or performed similarly to like Ms. Julia Bahl who made Presidents Club or Josh Mogul who has since been promoted to Management. Mr. Mogul received several territory changes early until he began to perform well. Plaintiff's Income would have been in the $150K area (instead of the approximate $60k earned in first year), had the Discriminatory practices against him not been in place and he was able to receive and work consistently the highly rated territory of Brooklyn/Orlando which they only awarded him in his 10th month of employment and only for 1 month.
34. Within the past 6 months, Yelp has promoted HR rep, Ms. Briana McKwelin to a Sales Director role in which her salary increased by at least $100K. Ms. McKwelin has no prior sales experience. This financial windfall she is receiving is reward for Yelp's expectation that she be complicit in their attempt to deny Plaintiff's protection as a member of a protected class (Black) under the Civil Rights Act of 1964.

**CONCLUSION  - For the foregoing reasons, Plaintiff respectfully requests that The Court accept this second amended Complaint so that justice may be achieved.**

**Opposition to Yelp's Motion to Dismiss - in lieu of responding to Yelp's Motion to**

**Dismiss, Plaintiff is requesting Leave to Amend**

**Plaintiff Has conferred with Yelp's attorneys prior to filing this motion (Friday July 31st via email) and was told that they do not consent to motion since they had not yet received the Amended Complaint.**

CERTIFICATE OF SERVICE I hereby certify that on August 3rd, 2020, I caused the foregoing document to be sent by Certified Mail United States Postal Service, to Defendant at the following address: Mr. Serine Consolino AEGIS LAW GROUP LLP 801 Pennsylvania Avenue, N.W., Suite 740 Washington, D.C. 20004.

Respectfully submitted,

Samuel B. Johnson

655 Anacostia Ave, NE

Washington, DC 20019

(202) 820-2083